**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **COUNTYWIDE PETROLEUM COMPANY,** | Case No.: 1:06cv1537 |
| Plaintiff, | JUDGE KATHLEEN M. O'MALLEY |
| v. | |
| **HUNTINGTON CAPITAL INVESTMENT COMPANY, et al.,** | **MEMORANDUM & ORDER** |
| Defendants. | |

This action was commenced originally in the Cuyahoga County Court of Common Pleas. It was removed to this Court on June 21, 2006, based on defendants' claim that this Court has exclusive jurisdiction over at least certain of the claims in plaintiff's complaint. Defendants assert this is so because those claims relate to or are preempted by bankruptcy determinations made by the Bankruptcy Court in the District of Delaware in connection with a bankruptcy filing by a third party, CF Capital Corporation ("CF Capital").

After removal, defendants filed a Motion to Dismiss (Doc # 6) and plaintiff filed a Motion to Remand (Doc #10). Briefing on the Motion to Dismiss was stayed pending the Court's decision on the Motion to Remand, which is now ripe. For the reasons noted below, the Motion to Remand is hereby **GRANTED** and this action is returned to the Common Pleas Court where it originated.

Defendants' Motion to Dismiss remains pending for consideration by that Court, presumably after full briefing of the matters presented therein.

I.

Given the Court's conclusion that defendants' removal of this action was inappropriate, the Court only briefly describes the circumstances giving rise to this dispute and the pending motions. Plaintiff, Countywide Petroleum Co. ("Countywide"), alleges that Huntington Capital Investment Company and Huntington National Bank (collectively "Huntington") engaged in a loan transaction ("the loan") with a Countywide debtor, Convenient Food Mart, Inc. ("CFM"). Countywide alleges that the loan was designed to prevent Countywide from collection of a substantial debt owed to it by CFM. Countywide asserts that Huntington engaged in the loan despite its long-standing banking relationship with Countywide, and despite full knowledge of the nature and circumstances of the CFM debt and its importance to Countywide's continuing business operations. In other words, Countywide claims Huntington conspired with CFM to help CFM avoid its debt to Countywide, while placing Huntington in a position ultimately to capture the very CFM assets which otherwise would have been available to satisfy the Countywide debt. And, Countywide claims, Huntington used the knowledge it gained of Countywide's dealings with CFM from the Huntington/Countywide banking relationship to help effectuate this scheme.

Based on this conduct, Countywide asserts claims against Huntington for breach of fiduciary duty (Count I), fraud (Count II), violation of the Ohio Uniform Fraudulent Conveyance Act (Count III), preferential transfer (Count IV), breach of duty of good faith and fair dealing (Count V), civil conspiracy (Count VI), and tortious interference with business relations (Count VII), all asserted under Ohio law. Countywide does not assert any claims against CF Capital or CFM in this proceeding.

Huntington asserts that the loan transaction was actually extended to CF Capital (not CFM), who Huntington describes as "the acquirer of the assets" of CFM. It claims that Countrywide's

objections to that loan <u>and</u> its impact on Countywide's ability to collect its debt from CFM already have been aired in the context of CF Capital's bankruptcy proceedings, which were filed in and remain pending before the United States Bankruptcy Court for the District of Delaware (Case No. 05-11557). Huntington says that the Bankruptcy Court has determined that the loan about which Countywide complains gave Huntington a priority secured claim over the assets of CF Capital, including those assets acquired from CFM, and that Countywide's complaint is simply a collateral attack on that order, which Countywide did not appeal.

Huntington premises both its removal of Countywide's Complaint to this Court and its Motion to Dismiss that complaint largely on the existence of, and rulings in, the Delaware bankruptcy proceeding. Specifically, Huntington asserts that this Court's general jurisdiction over matters relating to bankruptcy proceedings and the fact that certain of the state law claims asserted by Countywide are preempted by the bankruptcy court's earlier determinations place at least those claims "within the exclusive jurisdiction of the district court" (opposition at page 7), making removal appropriate.

II.

In making its arguments against remand, Huntington confuses the concepts of original jurisdiction and removal jurisdiction and, further, confuses the concepts of defensive preemption and subject-matter preemption. As to the first, while it is true that under 28 U.S.C. §1334(b) the District Court has original (though not exclusive) jurisdiction over matters "related to" cases under Title 11 (the Bankruptcy Code), it only has <u>removal</u> jurisdiction over such cases in limited circumstances. Specifically, 28 U.S.C. §1334(c)(2) directs District Courts to decline jurisdiction over <u>removed</u> causes of action which, even if "related to" matters arising under Title 11 (and, thus, a fair subject for the

3

assertion of original jurisdiction), the following is true: (1) the action is based on state law; (2) it was commenced in an appropriate state forum; (3) the District Court would not otherwise have jurisdiction over the claims asserted (i.e., other than through the connection to the Bankruptcy Code); (4) the matter is capable of timely adjudication in state court; and, (5) though related to a core proceeding, neither is a bankruptcy core proceeding nor arises in a core proceeding. Countywide contends that its cause of action against Huntington falls squarely within this jurisdictional carve-out and thus, must be remanded.

While Huntington weakly argues that several of the elements of §1334(c)(2) are not satisfied here, the only real dispute it has with Countywide's Motion to Remand on the authority of that statutory provision is Huntington's contention that Counts III and IV of Countywide's complaint are core proceedings, or at least arise in core proceedings, in the CF Capital Delaware bankruptcy.[1] Based on that contention, Huntington asserts that removal of the entire action is appropriate; indeed, Huntington contends this Court is <u>the</u> <u>exclusive</u> forum for these claims. Like its other efforts to remove this action from the limitation on removal spelled out in §1334(c)(2), however, the Court concludes that the assertion that the dispute between Countywide and Huntington is a core proceeding is also weak, fatally so.

While the full scope of what may be considered a core proceeding is not expressly delineated by statute or otherwise, an examination of 28 U.S.C. 157(b) – where a non-exhaustive list of matters

---

[1] Huntington also argues that Counts III and IV do not really "arise under" state law, even though expressly premised on it, because the state courts would be required to find that those claims are preempted by, or that plaintiff is estopped from pursuing them because of, the Bankruptcy Court's confirmation of CF Capital's plan of reorganization. The fact that one may have a valid defense to the assertion of a state claim does not however, defeat the state law character of that claim. Indeed, there is no alternative legal theory under which Countywide could have asserted its claims against Huntington (as distinct from a claim directed at CF Capital). Whether such a claim ultimately can be maintained in state court is an entirely different issue, as discussed further below.

4

that may be considered core proceedings appears – and relevant case law reveals that claims that are neither asserted by or against a debtor, nor involve a claim that the <u>debtor</u> (here CF Capital) owes funds to the plaintiff, are simply <u>not</u> core proceedings. <u>See</u>, <u>e.g.</u>, <u>In Re: United Brass Corp.</u>, 110F.3d 1261, 1268 (7th Cir. 1997) ("core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy"). Countywide sues <u>only</u> Huntington and seeks relief under state law <u>only</u> against Huntington. The mere fact that Countywide asks Huntington to pay money to it that may have been received in a bankruptcy proceeding, is "not enough to transform [its] state law claim into a core proceeding." <u>XL Sports, Ltd. v. Lawler</u>, 49 F.3d 13, 20 (6th Cir. 2002) (core proceedings must involve claims "directly created by bankruptcy law or that by nature could not exist outside the bankruptcy context"). Countywide's claim simply does not arise under the Bankruptcy Code, it is, rather, premised on state law. Thus, while Countywide's claims may "relate to" the CF Capital bankruptcy and may even "relate to" a core proceeding (i.e. the bankruptcy court's priority determinations), they are not themselves core proceedings. As such, they are not removable to this Court. <u>Id.</u> (a proceeding that is merely "related to" a case under Title II is necessarily "non-core", regardless of its potential to "have an effect on" a bankruptcy estate).

      Huntington's contention that Counts III and IV of Countywide's complaint can not be adjudicated under state law, either because Countywide is collaterally estopped from doing so by its failure to appeal the approval of CF Capital's plan of reorganization, or because they are preempted by that plan approval, neither converts those claims into core proceedings nor, as Huntington contends, makes this Court the exclusive forum for consideration of those claims. While preemption and

5

collateral estoppel are potentially legitimate defenses[2] to Countywide's claims in Counts III and IV, they are ultimately just that – defenses. As such, they are assertable in state court and nothing bars the state courts from considering them. Indeed, the jurisdictional carve-out in §1334(c)(2) represents a congressional recognition of the state courts' ability to properly assess such defenses and of a congressional desire that, at least in certain circumstances, they be permitted to do so. The question before this Court at this stage (when it assesses its own jurisdiction over the matters before it) is <u>not</u> whether Countywide's claims are valid (it is quite possible that some or all are not); it is whether those claims are removable to this Court. On that issue, the Court concludes that removal is prohibited by § 1334(c)(2) and that Countywide's Motion to Remand must be granted.

### III.

For these reasons, plaintiff's Motion to Remand (Doc #10) is **GRANTED**. This action is hereby **REMANDED** to the Cuyahoga Court of Common Pleas, where it was originally filed.

**IT IS SO ORDERED.**

         **s/Kathleen M. O'Malley**
         **KATHLEEN McDONALD O'MALLEY**
         **UNITED STATES DISTRICT JUDGE**

**DATED: March 6, 2007**

---

[2] <u>See</u>, <u>In Re: PWS Holding Corporation</u>, 303 F3d 308, 313. (3d Cir. 2002). The procedural posture of the <u>PWS</u> matter is telling. While the District Court did bar pursuit of the particular state law fraudulent transfer claim at issue there, it did not do so by accepting removal of the state cause of action; it did so in response to an affirmative claim for injunctive relief filed against the party pursuing the claim in state court. The District Court issuing the order, moreover, was the same District Court who confirmed the bankruptcy plan of reorganization -- putting it in a position of entering injunctive relief designed to protect the integrity of its own orders. The circumstances here are quite unlike those at issue in <u>PWS</u>.

S:\06cv1537removal.wpd